# CIRCUIT COURT OF KING GEORGE COUNTY

Pima Gro Systems, Inc., et al.

v.

Zoning Appeals Board
of King George County et al.

November 17, 1998

Case No. CH98-33

BY JUDGE WILLIAM H. LEDBETTER, JR.

The question presented in this review of a BZA zoning decision is whether in a certiorari proceeding the court has jurisdiction to rule on certain issues raised by the petitioners.

### Background Facts

This case involves the transportation of treated sewage ("sludge" or "biosolids") from a storage facility on Dogue Farm for application on other properties.

The history of King George County zoning laws pertaining to sludge storage and transportation is detailed in *Wheelabrator v. King George County,* 43 Va. Cir. 370 (1997), referred to by the parties in this case. It need not be repeated here.

In summary, the County adopted § 4.6.2.3 in 1987, allowing sludge storage facilities in certain zoning districts for on-site use. Transportation of sludge to other sites was prohibited. In 1989, § 4.6.2.3 was amended to abolish sludge storage facilities as a by-right use; instead, a special use permit was required. In 1993, the County repealed § 4.6.2.3 in its entirety.

C & R Contractors, Inc., filed two suits in King George County Circuit Court in 1992 and 1993 regarding its right to store sludge on Dogue Farm and

to haul it to other properties for field application. The suits were resolved by a consent decree on December 19, 1994, by which C & R was allowed to continue to store sludge in its Dogue Farm storage facility and to transport sludge to other farms within a specified radius.

Thereafter, C & R filed for bankruptcy. Its assets were sold. Pima-Gro purchased C & R's "sludge assets," including its rights under the 1994 consent decree. The purchase was approved by the bankruptcy court on November 27, 1996. Later, the bankruptcy court declined to specifically decide whether C & R's rights under the consent decree were transferable.

On July 8, 1997, the zoning administrator wrote a letter to the petitioners. In it, he stated that he had learned that sludge was being removed from the Dogue Farm storage facility for "offsite application." He informed the petitioners that "offsite land application of sludge from the storage facility is a violation of the King George County zoning ordinance." He directed that such activity "cease immediately."

He further explained that C & R had been given "limited rights to offsite apply" [sic] pursuant to the 1994 consent decree, but those rights "were personal to C & R Contractors, Inc., and are not transferable or assignable." Accordingly, he concluded, the petitioners would not be allowed to operate under the provisions of the consent decree.

The petitioners appealed the zoning administrator's determination to the BZA as provided in § 15.2-2311.

On March 24, 1998, the BZA conducted a hearing and voted unanimously to uphold the decision of the zoning administrator.

The petitioners timely filed a petition for a writ of certiorari under Virginia Code § 15.2-2314. The BZA responded with a demurrer and an answer.

On April 27, 1998, the court held a hearing on the petitioner's application for a restraining order. The application was granted, and the court's ruling was memorialized in an order entered on August 27, 1998.

The court heard arguments on the BZA's demurrer on September 21, 1998. The BZA argued that the court's review should be limited to a determination whether the removal of sludge from the Dogue Farm storage facility for offsite application is a vested right, i.e., a lawful nonconforming use under § 15.2-2307. According to the BZA, the court has no authority within the context of this certiorari proceeding to rule on ancillary matters raised by the petitioners, *viz.* whether the 1994 consent decree is valid and whether C & R's rights under the consent decree are transferable to the petitioners. The petitioners argued that all of these issues are properly before the court for its review of the BZA decision.

At the conclusion of the September 21st hearing, the court questioned whether the demurrer was the appropriate way for the court to determine the scope of its review in this case. A demurrer tests the sufficiency of a pleading. Here, the BZA has raised matters that requires the court to examine the record sent up by the BZA pursuant to the writ.

As a consequence of the court's observations, the parties have now agreed that the BZA's demurrer should be "treated as a motion for summary judgment pursuant to Rule 3:18 ... ." An order to that effect has been entered, and the parties have submitted memoranda in support of their positions.

## Decision

The review of a BZA decision on a petition for writ of certiorari is limited to the scope of the BZA proceeding. The reviewing court may only consider the correctness of the BZA's decision, a decision that is presumed to be correct. The BZA's decision should be reversed or modified only if the court determines that the BZA applied erroneous principles of law or was plainly wrong and in violation of the purposes and intent of the zoning ordinance. *Foster v. Geller*, 248 Va. 563 (1994).

Although the court may take additional evidence, § 15.2-2314, the proceeding is not a trial *de novo, Ashland v. Ashland Investment Co.*, 235 Va. 150 (1988), and the court's review is limited to determining whether the decision of the BZA is plainly wrong or is based on erroneous principles.

Because this court's review is limited to the BZA proceeding, it is necessary to determine the nature and extent of the BZA proceeding.

The BZA proceeding was an appeal of the determination made by the zoning administrator. Thus, its decision was limited to the issue whether the zoning administrator's decision was correct.

What was the zoning administrator's decision? The zoning administrator decided that the petitioner's removal of sludge from its Dogue Farm storage facility for offsite application "is a violation of the King George County zoning ordinance." Implicit in that decision is the determination that the zoning ordinance does not allow removal of sludge from storage facilities to other farms and the further determination that the petitioners have no vested rights to engage in that activity.

Anticipating that the petitioners would assert a right to engage in that activity as successors-in-interest to C & R, who had limited rights to haul sludge under the 1994 consent decree, the zoning administrator opined that C & R's rights "are not transferable or assignable." Therefore, he concluded, the petitioners cannot rely on the consent decree to defend their activity, and

without the consent decree, their removal of sludge for offsite application is illegal.

When the BZA took up the case on March 24, 1998, it heard from the petitioners and received statements of others. Members of the board engaged in dialogue with counsel about the proper underpinnings of a decision in the case, including, specifically, whether the 1994 consent decree should be considered. The BZA upheld the decision of the zoning administrator.

The BZA correctly cites *Board of Zoning Appeals v. University Sq. Ass'n*, 246 Va. 290 (1993), for the proposition that a reviewing court has authority only to examine issues decided by the BZA. The petitioners agree with the proposition but argue that the record makes clear that the 1994 consent decree *was* an issue before the BZA and was a basis for its decision.

Both parties miss the point. *Even if* the BZA considered the 1994 consent decree because the zoning administrator referred to it in his notice to the petitioners, neither the zoning administrator nor the BZA had authority to interpret or construe the judicial decree for purposes of making a zoning determination in this case.

The powers and duties of the zoning administrator are set forth in the enabling legislation. See, e.g., § 15.2-2299. Those responsibilities are clearly limited to administering and enforcing the zoning ordinance. The powers and duties of the BZA are likewise established by the enabling legislation. See, e.g., § 15.2-2309. Pertinent here, its responsibility is to hear and decide appeals from decisions of the zoning administrator made by him *in the administration or enforcement of the zoning laws.* § 15.2-2309(1).

The zoning administrator determined that the petitioner's activity violated the zoning ordinance. The BZA upheld that decision. Insofar as the zoning administrator relied upon his interpretation of the 1994 consent decree, or his understanding of its transferability, he did so only to point out that in his opinion the petitioners could not use the consent decree as justification for their violation of the zoning ordinance.

The consent decree is not part of the zoning laws of King George County. Therefore, any reference made by the zoning administrator to the consent decree was not within the purview of his authority. In addressing that issue, he was not administering or enforcing the zoning laws.

For the same reason, any consideration of the consent decree at the BZA hearing was beyond the scope of the BZA's proper decision-making function. Any attempt to interpret or construe the consent decree, or to determine its validity, reach, or transferability, had nothing to do with the administration or enforcement of the County's zoning ordinance.

Surely, any administrative board may *discuss* matters beyond its power to decide and may ponder the impact of those other matters upon its decision in the case before it. Because the law assumes that administrative tribunals, including BZAs, act within the scope of their authority, this court will assume that the discussion about the consent decree at the BZA hearing can be explained in that manner.

Either way, the effect of the 1994 consent decree upon the primary issue — i.e., whether the petitioners' activity violates the zoning ordinance — is not an issue that this court is authorized to determine in a certiorari proceeding because it is not a zoning issue that either the zoning administrator or the BZA had the power to decide.

Accordingly, partial summary judgment will be granted, and the court will not consider the 1994 consent decree further in this certiorari proceeding.